J. A. REED, as Warden, etc., *vs.* GEORGE M. SEYMOUR and others.

November 13, 1877.

State Prison—Lease by Warden of Shops and Vacant Ground—Laws 1866, c. 10, Construed.—Chapter 10, Laws 1866, by which the inspectors and warden of the state prison are authorized "to lease the prison shops and such vacant ground as the inspectors deem proper," authorizes them to lease only such shops and ground as the state may possess at the time of the execution of the lease, or during its continuance.

Same—Same—Covenant in Excess of Authority of Warden Void.—Hence, in a lease made under said chapter, a covenant by which it is attempted to bind the state, at all times during the continuance of the lease, to furnish and provide, within and upon the premises leased, all reasonable and necessary ground and shop-room for the profitable and convenient employment of the convicts turned over to the lessees, is in excess of the authority of the warden and inspectors, and, as respects such excess unauthorized and void.

Same—Same—Same—Lease not Necessarily Void.—This excess of authority is not an illegality rendering the lease void.

Same—Same—Same—Covenant may be Ratified by Legislature—Intent to Ratify must Distinctly Appear.—It would seem to be competent for the legislature to recognize and ratify such unauthorized and void covenant. But to be effectual, the legislative intent to recognize and ratify must distinctly and unmistakably appear.

This was an action to recover certain rent, and the hire of certain convicts, for the quarters ending June 30 and September 30, 1876, under a written contract entered into July 1, 1872, by the warden of the state prison, in behalf of the state and Seymour, Sabin & Co., whereby there was leased to the latter certain prison shops and grounds, and also hired out to the latter certain convict labor, for the term of nine years, at a stipulated rent and hire. Said contract also contained the following covenant, to-wit:

"And the party of the first part, for himself and successors in office, on behalf of the state of Minnesota, does covenant and agree, to and with the parties of the second part, and their successors in interest herein, that said state of Minne-

sota shall at all times during the continuance of this contract furnish and provide, within and upon the premises herein demised, all reasonable and necessary ground and shop-room for the profitable and convenient employment of the convicts turned over to and employed by the parties of the second part, or their successors in interest under this contract."

The defendants alleged a breach of the aforesaid covenant, during the whole term up to the time this action was brought, and set up their consequent damages as a counter claim to the plaintiff's demands under the contract.

The case was tried in the district court for Washington county, by *Crosby*, J., and a jury.

In charging the jury the court said, in relation to the above covenant: "The words, 'all reasonable and necessary ground and shop-room for the profitable and convenient employment for the convicts,' used in said contract, are to be taken and understood by you to mean, such an amount of shop and ground room to work each of said prisoners, with due regard to the economy of the time of said prisoner, and in such a way that no unusual loss of time in the labor of such prisoner or prisoners should be occasioned by want of sufficient space in which to work. This profitable working of such prisoners has no reference to the fact whether the defendants made or lost money upon the work of such prisoners."

Again, the court said: "But under the contract it is the duty of the state of Minnesota to erect such workshops as are necessary for the profitable and convenient employment of the men, following the definition of those terms as I have given you. If they did not do it, and Seymour, Sabin & Co. have sustained any damage by reason of it, then Seymour, Sabin & Co. have a right in this action to have the damages that they have sustained deducted from the amount that the state claims." The court also refused the following request of the plaintiff as to the qualification of its instruction as to the duty of the state to erect workshops within the grounds of the prison yard: "But the state was not required to erect

workshops of such a size as would interfere with the proper use of the then existing buildings for the purpose of a prison, or with the proper use of the yard for prison purposes."

The plaintiff duly excepted to the portions of the charge above quoted, and to the refusal of the above request.

The jury rendered a verdict for the defendant. Plaintiff thereupon moved for judgment, notwithstanding the verdict, and for a new trial. Both said motions were denied, and plaintiff appealed from the order denying these motions.

*Geo. P. Wilson*, Attorney General, and *Geo. B. Young*, for appellant.

If the covenant be construed to mean that the state shall erect additional buildings, whenever required, "for the profitable and convenient employment of the convicts," it is clear that it would be not only inconsistent with the evident intention of the parties, but absolutely void. Constitution, art. 9, § 9; Gen St. *c.* 120, § 48; Laws 1866, *c.* 10. The covenant, however, should be so construed as to render it valid, and should, therefore, be held to mean that the convict labor should be employed in the then existing shops, or such as the state might thereafter see fit to erect, and that all of such shop-room, which might be necessary for the profitable and convenient employment of the convicts, should be furnished to defendants.

Even if this covenant was valid, however, a breach would not constitute a defence to this action. Performance was not a condition precedent to plaintiff's right of action on defendants' covenants to pay the rent and hire. The covenant alleged to have been broken does not go to the whole of the consideration of the defendants' covenants, (1 Wms. Saunders, 320 *b*, note 4 to *Pordage* v. *Cole*; *Boone* v. *Eyre*, 1 H. Bl. 273, n. *a.*; S. C. 6 Term Rep. 573; *Campbell* v. *Jones*, Id. 570; *Ritchie* v. *Atkinson*, 10 East. 295; *Havelock* v. *Geddes*, Id. 555, 564; *Davidson* v. *Gwynne*, 12 East. 381; *Fothergill* v. *Walton*, 8 Taunt. 576; *Carpenter* v. *Creswell*, 4 Bing. 409; *Stavers* v. *Carling*, 3 Bing. N. C. 355; *Seeger* v. *Duthie*,

8 C. B. N. S. 45; *Seeger* v. *Duthie*, (in Cam. Scac.) 8 C. B. N. S. 72; *L. G. L. C.* v. *Vestry of Chelsea*, 8 C. B. N. S. 215; *Mc-Andrew* v. *Chapple*, L. R. 1 C. P. 643; *Tarrabochia* v. *Hickie*, 1 H. & N. 183; *Newson* v. *Smythies*, 3 H. & N. 840; *Robinson* v. *Crowninshield*, 1 N. H. 76; *Wallace* v. *Antrim Shovel Co.*, 44 N. H. 527; *Bennet* v. *Pixley*, 7 John. 249; *Tuttle* v. *Tompkins*, 2 Wend. 407; *Allen* v. *Pell*, 4 Wend. 505; *Tompkins* v. *Elliott*, 5 Wend. 496; *Betts* v. *Perine*, 14 Wend. 219; *Hill* v. *Bishop*, 2 Ala. 320; *Benson* v. *Hobbs*, 4 Har. & J. 285; *Nelson* v. *Oren*, 41 Ill. 18,) and by the terms of the contract the time for performance by the defendants might precede the time for performance by the plaintiff.    1 Wms. Saunders, 320 *b*, note 4 to *Pordage* v. *Cole*; *Mattock* v. *Kinglake*, 10 Ad. & El. 50; *Cutler* v. *Bower*, 11 Q. B. 973; *Judson* v. *Bowden*, 1 Exch. 162; *Sibthorp* v. *Burnet*, 3 Exch. 826; *Dicker* v. *Jackson*, 6 C. B. 103; *State* v. *W. & St. P. R. Co.* 21 Minn. 472, 481; *Seeger* v. *Duthie*, 8 C. B. N. S. 45; *Tompkins* v. *Elliott*, 5 Wend. 496.

This case is analagous to one where, upon a demise by lease, the tenant covenants to pay the rent and the landlord covenants to make repairs; and in such a case it is perfectly well settled that the covenant of the tenant is an independent covenant.    Wash. Real Prop. (4th Ed.) B. 1, *c.* 10, § 4, par. 2, *a; Tuttle* v. *Tompkins*, 2 Wend. 407; *Allen* v. *Pell*, 4 Wend. 505; *Watts* v. *Coffin*, 11 John. 495; *Sickels* v. *Fort*, 15 Wend. 559; *Benson* v. *Hobbs*, 4 Har. & J. 285; *Hill* v. *Bishop*, 2 Ala. 320.    The covenants of the defendants being therefore independent, a breach of the plaintiff's covenant could not be pleaded in bar to an action on defendant's covenants, nor would the matters pleaded in the answer constitute a defence.    *McCampbell* v. *Miller* 1 Bibb, 453; *Webster* v. *Warren*, 2 Wash. C. C. 456.

Under such circumstances the defendants' only remedy at common law would have been by an independent action for damages, but under our modern system of pleading the breach may be set up as a counter claim.    The change, how-

ever, in the mode of pursuing the remedy has not worked any change in substantive legal rights, and the counter claim cannot, therefore, be sustained, unless the facts alleged would constitute a good cause of action in an independent suit. Pom. on Leg. Rem. §§ 731, 733, 738; Waterman on Set-Off, §§ 596, 598; Moak's Van Santvoord, 616, 626; *Eastman* v. *Linn*, 20 Minn. 433; *Barker* v. *Walbridge*, 14 Minn. 469; *Reed* v. *Newton*, 22 Minn. 541. But plaintiff's covenant, as construed by defendants, is *ultra vires*, and therefore void. The covenant being void, the breach would not constitute a cause of action in an independent suit, and therefore cannot constitute a counter claim in this action.

Again, the covenant was not illegal, but merely *ultra vires*. This was known to both parties when it was made, and therefore could have formed no part of the consideration for defendants' covenants, as it could have formed no legal inducement to defendants to enter into them. *Thomas* v. *Thomas*, 2 Q. B. 851, 859; Broom's Leg. Max. 748; 1 Chit. Con. 24. And even if the plaintiff's covenant formed one of the considerations for those of defendants, this covenant being simply void, and void merely because *ultra vires*, the other considerations will support the covenants of defendants. Metc. on Con. 216; 1 Par. on Con. (5th Ed.) 455; 1 Chit. Con. 67–8; *Pikard* v *Cottels*, Yelv. 56; *Crisp* v *Gamel*, Cro. Jac. 128; *Jones* v. *Waite*, 5 Bing. N. C. 341; *Shackell* v. *Rosier*, 2 Bing. N. C. 634, 646; *Wesleyan Seminary* v. *Fisher*, 4 Mich. 515, 526. In any event the defendants can only avail themselves of the breach during the time the rent and hire accrued which is sought to be recovered in this action.

*McCluer & Marsh*, for respondents.

The warden is by the statute made a corporation sole, upon whom is devolved all the authority possessed by the state for the proper management of the affairs of the state prison. The extent of his authority is therefore not to be tested by the special provisions of the law relating to his appointment and powers, but by the general body of laws

relating to the state prison, the object of its creation, the uses to be subserved by it, and the duty and responsibility of the state with reference to it. Gen. St. *c.* 120, §§ 45, 46, 47, 50; Laws prescribing penalties for various offenses to be confinement at hard labor in the state prison; *Seymour* v. *Webber*, 1 Ex. Doc. (1872) 14; *Jansen* v. *Ostrander*, 1 Cow. 670; *Overseers* v. *Overseers*, 18 John. 407. The mere fact that the statute authorizes the letting of convict labor, confers upon the convict the right to labor, and the means necessary for its enjoyment; and implies a covenant on the part of the state that reasonable facilities for the employment of the convicts shall be furnished the lessee. It is clear, therefore, that it was the duty of the state to provide the necessary shops, and that the covenant of the warden was within the scope of his authority.

The covenant being valid, damages for the breach may be set off in this action, (Gen. St. *c.* 66, §80; *Barker* v. *Walbridge*, 14 Minn. 469; *Matthews* v. *Torinus*, 22 Minn. 132; *Griffin* v. *Jorgenson*, Id. 92,) and may include all the damages suffered during the whole term up to the time suit was brought. *Myers* v. *Burns*, 35 N. Y. 269; *Cook* v. *Soule*, 56 N. Y. 420.

The plaintiff is estopped from denying the validity of this contract, upon which he has based his action, and upon which he stands, not as the state asking to be relieved from the unauthorized contract of an officer, but as an individual seeking to enforce such provisions of an entire contract as are favorable, and to repudiate those which are adverse. Big. on Estop. 578; *Farrow* v. *Bragg*, 30 Ala. 261; Herman's Law of Estop. §§ 469, 472–475.

Moreover, the contract has been ratified by the state in the acceptance of rents which have formerly accrued, and by the extension of the contract by the act of the legislature, duly approved by the governor and auditor. Laws 1866, *c.* 18.

Again, the contract sued upon is an entire contract, and if the covenant of the plaintiff is void, the whole contract is necessarily void, even if it be not *contra bonos mores.* *De Burs-*

*kie* v. *Paige,* 36 N. Y. 537; *Thayer* v. *Rock,* 13 Wend. 53; *Crawford* v. *Morrell,* 8 John. 195.   The contract in this case, however, if void, is void because it is against public policy that any department of the state government should have the power to make a contract which may require in its performance the expenditure by the state of money which has not been appropriated by the legislature.   It would, therefore, not only be *ultra vires,* but illegal, and consequently such a contract as a court of justice would not enforce.   *Perkins* v. *Cummings,* 2 Gray, 258; *Burt* v. *Place,* 6 Cow. 431; *Hyslop* v. *Clark,* 14 John. 459; *Bank* v. *King,* 44 N. Y. 87; *Rose* v. *Truax,* 21 Barb. 361; *Casady* v. *Woodbury,* 13 Iowa, 113.

BERRY, J.   This is an action for rent of prison shops and grounds, and for the price of convict labor, upon a written contract, entered into by and between the plaintiff, as warden of the state prison, for and in behalf of the state of Minnesota, as party of the first part, and the defendants as parties of the second part.   The contract was made under chapter 10, Laws 1866, by which the inspectors and warden of the state prison are authorized "to lease the prison shops and such vacant ground as the inspectors deem proper, also to let to service all able-bodied convicts confined within the prison, to the lessee of the prison shops and fixtures."

The contract in this case leased to defendants "all workshops and unoccupied grounds situate within or without the walls surrounding said state prison," and contained the following clause, viz : " The party of the first part, for himself and his successors in office, on behalf of the state of Minnesota, does covenant and agree to and with the parties of the second part, and their successors in interest herein, that said state of Minnesota shall at all times during the continuance of this contract furnish and provide, within and upon the premises herein described, all reasonable and necessary ground and shop-room for the profitable and convenient employment of the convicts turned over to and employed by the parties of

the second part, or their successors in interest under this contract."

The defendants insist that the intention of this clause of the contract is to absolutely bind the state to furnish and provide all ground and shop-room which may be, *in fact*, reasonable and necessary for the purpose mentioned, without reference to whether, at the time when the contract was made, the state possessed such ground and shop-room, or whether it might become possessed of the same at any time during the continuance of the contract. In this, their construction of the clause, we think the defendants are right. But we are also of opinion that it was not competent for the warden and inspectors to bind the state to that extent. Their authority in this regard is, by statute, "to lease the prison shops and such vacant ground as the inspectors deem proper." This is an authority to lease only such shops and grounds as the state may possess, including, as we think, by fair construction, such as the state may possess at the time of the execution of the lease or during its continuance. In so far as the clause of the contract in question attempts to go further, it is therefore *ultra vires* and does not bind the state for any purpose.

The defendants claim that if the clause is in any respect *ultra vires* it is so far illegal, and that its illegality taints the entire contract, which is therefore void. It is true that the clause is not authorized by law, and therefore it may in a certain popular but loose sense be said to be illegal. But the illegality which avoids a contract tainted with it is something which is *contra bonos mores*, or involves some breach of legal duty. This clause does neither. It is simply a case of excess of authority by an agent in making an executory contract, and, in addition, of an excess of authority which the law conclusively presumes to have been known to both contracting parties, because the real authority of the agent is defined by a public statute, of which every person is bound to take

notice. From the latter fact it follows that there can be no foothold for an estoppel in the case.

Upon these grounds the clause in question, in so far as it goes beyond the law, is a simple nullity, and the failure of the state to comply with it, any further than the warden's authority to bind the state extended, furnishes the defendants no ground of defence or counter claim in this action.

It is claimed by the defendants that the contract, as respects the clause in question, has been recognized and ratified by the legislature, and thereby made good and binding upon the state. It would seem to be competent for the legislature to do this. But to have the effect to recognize and ratify, the legislative intent to do so must distinctly and unmistakably appear. We have not been directed to any legislative action, nor have we found any, from which such intent is thus made to appear, as respects the clause in question.

Order reversed.