Gano vs. The Chicago & Northwestern Railway Co.

GANO VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*March 11 — March 30, 1880.*

*(1) Court and jury: Question of agency. (2) Divisibility of contract.*

1. In an action for defendant's breach of an alleged contract to purchase stone of plaintiff, the undisputed facts were, that one C., who was foreman of certain parts of defendant's mason work then in progress in the vicinity of plaintiff's quarry, having authority so to do, contracted with plaintiff, in defendant's behalf, for 400 yards of stone to be used at X.; that plaintiff delivered the 400 yards at X., and received payment therefor; that he was ready and willing to deliver 1,200 yards additional at Y., and so notified defendant, claiming that defendant, by C., had contracted with him therefor; and that defendant denied having contracted for any part of the latter quantity, and refused to receive it. Plaintiff's evidence tended to show that C. did contract with him in defendant's name for said 1,200 yards, to be delivered at Y., claiming to have

authority to make such contract. Defendant's evidence tended to show that C. had never before bought any stone for the company, and had no authority in this case to buy more than was required at X.; that when the stone delivered at X. was paid for, defendant's chief engineer and other general officers had no knowledge that C. had undertaken to contract for any other stone; and that he had never, in fact, so undertaken. *Held*, that the questions whether C. had authority to contract for the 1,200 yards to be delivered at Y., and whether defendant had ratified such a contract, were *for the jury;* and it was error to instruct them that, if satisfied of the facts above stated as undisputed, and also that C. did undertake to make such contract, claiming to have authority therefor, they must find for plaintiff.

2. It was also error to charge that the alleged contract for 1,600 yards of stone was indivisible, and that defendant, after accepting a fulfillment in part, could not repudiate the contract as to the remainder.

APPEAL from the Circuit Court for *Sauk* County.

Defendant appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

*F. J. Lamb* and *L. S. Dixon*, for the appellant.

For the respondent there was a brief by *R. E. Noyes*, his attorney, with *J. W. Lusk*, of counsel, and oral argument by *Mr. Lusk*. They contended, 1. That Celluyham was authorized to make the contract alleged in the complaint, or had at least such apparent authority that his acts were binding on his principal in favor of one who dealt with him in good faith. In support of this view they cited Story on Agency, §§ 17–20, 54, 127; 2 Kent's Com., 613; *F. & M. Bank v. B. & D. Bank*, 16 N. Y., 145; *Anderson v. Coonley*, 21 Wend., 279; *Houghton v. National Bank*, 26 Wis., 669; *Kasson v. Noltner*, 43 id., 650; *Merchants' Bank v. State Bank*, 10 Wall., 644. 2. That defendant, by its duly authorized agent, ratified the contract by receiving, using and paying for a portion of the stone in accordance with the contract, with full knowledge of the facts. The corporation was compelled to have some representative agent to receive the stone, measure them, direct the use of them, make out proper vouchers, etc.; and that agent (in this case Celluyham himself), while doing that

business, stood in place of the corporation, "*vested with its whole power.*" *M. & M. Railroad Co. v. Finney*, 10 Wis., 388; *Bass v. Railway Co.*, 36 id., 450; *Craker v. Railway Co.*, id., 657; *State ex rel. Continental Ins. Co. v. Doyle*, 40 id., 233.

TAYLOR, J. This action was brought to recover damages of the defendant company for the breach of a contract which the plaintiff claims to have made with the company for the delivery of 1,600 yards of stone at certain places upon the line of the defendant's road. The facts as they appear from the evidence are these:

The plaintiff was the owner of a stone quarry near the line of the defendant's railroad in Sauk county, in this state. The defendant company were doing some stone-work on the line of their road near Devil's Nose, and were intending to do some other stone-work at what was called Crawford Creek or Crossing. It would be necessary to have 300 or 400 yards of stone for the work at Devil's Nose, and about 1,200 yards at Crawford Crossing. The plaintiff had some talk with Johnson, the chief engineer of the defendant, about furnishing stone for the work at Devil's Nose, and also for the work which was to be done at Crawford Crossing; but they disagreed about the price, plaintiff wanting $3.50 per yard, and Johnson, the engineer, offering only $3, and no contract was made. Shortly after this conversation with Johnson, one Celluyham, who was foreman of the mason work at Devil's Nose and at Merrimac bridge, on the line of said road, called upon the plaintiff, and, as the plaintiff says and the evidence tends to show, told plaintiff that he was authorized to contract with him on behalf of the defendant for stone for the work at Devil's Nose, which was then in progress, and also for the work which it was expected would be done at Crawford Creek, and made a contract with plaintiff for 1,600 yards of stone, 400 yards to be delivered at Devil's Nose and 1,200 yards at

Crawford Creek, for which the defendant company was to pay the sum of three dollars per yard. Under such contract the plaintiff went on and got out 400 yards for the work at Devil's Nose, and most of them were delivered at that place and paid for; and he was ready and willing to deliver the 1,200 yards at Crawford Creek, and so informed the engineer, Johnson, and Johnson, on behalf of the company, notified the plaintiff that they would not receive the same, and that the company had made no contract with him for any stone for the work at Crawford Creek.

The evidence also shows that the foreman, Celluyham, had never bought any stone for the company before this purchase made of the plaintiff; that he had no general authority to buy stone for the company; and that in this case he had been directed to buy only such an amount of stone as would be wanted to complete the work at Devil's Nose, and had no authority whatever to buy stone for the proposed work at Crawford Crossing. It also appeared that none of the officers of the company had any knowledge that the plaintiff claimed to have made any contract with Celluyham for stone to be delivered for the work at Crawford Crossing, at the times they paid the bills for the stone delivered for the work at Devil's Nose; and Celluyham himself swore on the trial that he had made no contract with the plaintiff for the delivery of any stone except such as were wanted for the last named work.

Celluyham testified that he was foreman, and had charge of the masonry on the Merrimac bridge and of the culvert called Devil's Nose culvert; that his duties were to superintend the masonry, stone-cutting and general work; that he employed men, kept their time and reported it, and saw that the work was executed properly according to instructions; and that he never bought any stone for the company, or anything else, except those for the culvert at Devil's Nose, and a few yards of wall stone, which he was directed to get of the plaintiff by the assistant engineer, to finish such work. The testi-

mony of Celluyham upon this point is corroborated by the other witnesses, and no evidence was given showing that Celluyham had ever at any time purchased, or had any express authority to purchase, stone or other materials for the defendant company, except as above stated.

The appellant moved for a nonsuit both at the close of the plaintiff's evidence and when the whole evidence was in, and the refusal of the nonsuit is alleged as error; but, as the majority of the court are of the opinion that there was some evidence in the case which might properly have been submitted to the jury as tending to show that Celluyham had the power to bind the company by a contract for the delivery of the 1,200 yards of stone at the Crawford Crossing as well as the 400 yards at the Devil's Nose culvert, we shall consider the whole case upon the instructions which were given to the jury, and which were excepted to by the counsel for the defendant.

The exceptions to the refusal to grant a nonsuit and those to the refusal to give the instructions asked, raise the same questions, viz., whether there was any evidence tending to show that Celluyham was authorized to bind the company by contract for the delivery of the 1,200 yards of stone at Crawford Crossing, or whether there was anything done by the company or its authorized agents, after the alleged making of such contract, which tended to prove a ratification of such contract, if made originally without authority.

As said above, the majority of the members of this court hold that there was some evidence given upon the trial of this case which tended to show the agency of Celluyham, or a ratification of his contract afterwards, if made without authority in the first instance, and only disagree with the learned circuit judge as to the effect which should be given to such evidence, if found in favor of the plaintiff. All the justices concurring in this opinion agree that the evidence given for the purpose of establishing the agency of Celluyham

does not establish such agency as a question of law, and that the learned circuit judge should therefore have submitted the evidence to the jury as evidence tending to prove such agency, and left it with the jury to find as a question of fact whether such evidence established the agency. In this view of the case we are of the opinion that the learned circuit judge erred in several of his instructions to the jury. The instructions given, and which were excepted to by the defendant, were as follows:

"1. In reference to said alleged contract, in the absence of any knowledge upon the part of the plaintiff as to whether or not said Celluyham had authority to make it, if such you find the fact to be, I think, and so charge you, that if you should find, from the evidence, that Celluyham was foreman and had charge of the mason work on the line of defendant's road in the vicinity of Baraboo, or where the stones were to be delivered, and had at the time authority to make some contract with the plaintiff about stone, and had authority to employ men to carry on the work; that Celluyham entered into said contract professedly for the company; that after it was made the plaintiff commenced delivering stone in accordance with it, and continued to do so through a portion of the months of June and July, and they were received and put into the defendant's road, and paid for at the contract price — the plaintiff had a right to presume, after such receipt and use commenced and was going on, that said Celluyham had authority to make the contract.

"2. And the company could not, after the amounts actually received and used were received and used, repudiate it.

"3. Railroad companies should be held to a knowledge that lines of road belonging to it are being built or substantially repaired, and how or by what agency or agencies it is being done, and materials furnished or obtained; and after the lapse of considerable time after the execution of a contract is commenced and a partial fulfillment of a contract

made in its behalf by a person having the immediate super-
vision of the work and authority to make some contract of
the kind, and after it has enjoyed the benefit of having and
using a portion of the materials, it cannot repudiate the con-
tract.

" 4. In other words, it cannot then repudiate the part unful-
filled, after it has been fulfilled in part.

" 5. And if it afterwards appears that the person in charge
of the work, having authority to employ men to prosecute it,
and having authority to make a contract of some kind for
the purchase of stone at the time of the alleged purchase,
exceeds his authority, so that a fulfillment of it would be to
the prejudice of the company, and the non-fulfillment of it to
the prejudice of the party with whom the contract was made,
the company who has put the person then acting upon the
work, and authorized him to employ men to prosecute it and
make some contract for stone and materials to be used in the
work, should be the sufferer.

" 6. The alleged contract, as the plaintiff claims it, was an
entire contract for the delivery of 1,600 yards of stone, and as
such must be held or rejected.

" 7. It is true, as he states it, that it was mentioned and
understood that 400 yards were for one place, or for work at
No. 188, and the balance of 1,200 yards was for Crawford
Crossing, which, as he claims, the chief engineer had told him
some time before, if I remember rightly — you will remember
how the fact is,— was going to be built, as he thought, that
summer, and which, as he claims, Celluyham told him, or
gave him to understand at the time of the alleged contract,
was going to be built that summer.   I see no way of severing
the contract, and dividing it so as to submit it to you to find
one portion valid and the other not.

" 8. And, if you have understood the instructions already
given, you will understand that they are based upon the
plaintiff's claim and the evidence given upon his part, with

some testimony upon the other side tending to show authority from Johnson, the chief engineer, through his assistant, to Celluyham, to make some contract for stone with the plaintiff, although, as is claimed upon the part of the defendant, and as the evidence tends to show, differing from the alleged contract very materially. *You will bear in mind that I have qualified some of the foregoing instructions by telling you that, in order to find for the plaintiff on the first count, you must find, among other things named, that Celluyham had charge of the mason work, and employed men for the purpose of prosecuting it on the line of road in question, wherever the company directed work done, and that he had authority from the chief engineer, or through his assistant, to make some contract for stone, when it is alleged this contract was made.*"

These instructions were severally excepted to by the defendant.

It will be seen, by an examination of these instructions, that the learned circuit judge was of the opinion that, if certain facts were found by the jury, then the plaintiff was entitled to recover; and, of the facts which he seemed to think would entitle the plaintiff to recover, none were disputed except the fact as to the making of the contract by Celluyham, as alleged by the plaintiff and denied by him. The facts spoken of in these instructions as fixing the liability of the defendant were all admitted or proved by uncontradicted evidence. There was no dispute as to the fact that Celluyham was foreman and had charge of the mason work on the line of the road in the vicinity of Baraboo when the stone were to be delivered; nor that he employed the men; nor that he had authority to make some contract with the plaintiff about stone; nor that some of the stone contracted for were received and put into the defendant's road; nor that the stone so received were paid for at the contract price. The learned circuit judge instructed the jury, in substance, that if they found

these admitted facts in favor of the plaintiff, and also the disputed fact as to the making of the contract by Celluyham with the plaintiff, as was alleged by the plaintiff, then they should find for the plaintiff.

We are of the opinion that, when taken in connection with the other evidence in this case, none of these facts, nor all of them taken together, justified the learned circuit judge in holding that they raised a legal presumption of an agency on the part of Celluyham which authorized him to bind the company by the contract alleged to have been made by him with the plaintiff in its behalf, nor of a ratification of such contract by it after the making of the same. We are satisfied that the learned circuit judge erred in not submitting these questions as questions of fact, to be found by them, instead of instructing them that if they found certain facts they should find for the plaintiff. At most, these facts only tended to prove the alleged agency and the alleged ratification. Whether the facts proved the agency or the ratification, were questions for the jury and not for the court. Paley on Agency, 200, note, p. 211; *Thorold v. Smith*, 11 Mod., 88; *Dyer v. Pearson*, 3 B. & C., 38; *Commercial Bank v. Norton*, 1 Hill, 501; *Ladd v. Hildebrant*, 27 Wis., 135–146.

The evidence as to the receipt and payment for a part of the stone alleged to have been purchased would have more or less weight in determining the question of ratification of the contract, if made by Celluyham without authority, according to the circumstances attending such receipt and payment. If the evidence had shown that some officer or employee of the company, who had power to bind the company by the purchase of stone, had knowledge that Celluyham had in fact contracted for 1,600 yards of stone, 1,200 yards of which were to be delivered for the contemplated work at Crawford Crossing, and 400 yards at the Devil's Nose culvert, then being constructed, and, with such knowledge, the 400 yards had been received and paid for, such evidence would have been very

strong, if not conclusive, evidence of a ratification of the entire contract; but if the stone were received without any knowledge on the part of such authorized person that a contract had been made for any more stone than were required for the culvert then in course of construction, and no stone were received or paid for except such as were required for such culvert, the evidence would have but slight weight.

So, if the evidence had shown that the culvert at Crawford Crossing had also been in process of construction, and under the superintendence of Celluyham as foreman of the mason work, at the same time he was constructing the culvert at Devil's Nose, the evidence of the receipt and payment for the stone at the last named culvert would be much stronger evidence, both on the point of ratification and of his power to bind the company as its agent for all the stone needed for both works, than if received and paid for when no work was commenced or being done at Crawford Crossing. So the fact that Celluyham was the foreman of the mason work on the defendant's line in the vicinity of where the stone was purchased by him, if any evidence tending to show his agency for the purpose of purchasing materials for his work, would have more weight when the purchase was made for the purposes of immediate use upon a work then in process of construction, than when purchased for the purposes of a work not in the course of construction, and as to the construction of which no definite time had been fixed upon by the company. It is, we think, very clear that the sufficiency of the facts proved to establish the agency of Celluyham was a question for the jury, and that the learned judge erred in instructing the jury that, if they were found to be facts in the case, then the plaintiff should have a verdict.

We are also of opinion that the sixth and seventh instructions above quoted were erroneous. There does not appear to be any reason for saying that the contract was indivisible, and that the plaintiff must recover, if at all, upon the whole contract. If Celluyham, with whom the contract was made, had

Gano vs. The Chicago & Northwestern Railway Co.

authority to contract for 400 yards of stone, to be delivered at a particular place and for a particular purpose, and no more, and he in fact contracted for 1,600 yards, and the greater portion of the 400 yards had been delivered at the place and for the purpose for which he was authorized to purchase, there is no apparent reason why plaintiff might not recover for the 400 yards so contracted for, and of which a partial delivery had been made, although he should fail entirely to show any liability on the part of the defendant to receive and pay for the other 1,200 yards. If an agent has authority to buy one horse for his principal, and he buys two, and one is delivered to the principal and accepted by him, without any knowledge on his part that the agent has purchased two, certainly he cannot lawfully refuse to pay for the one he has received and accepted because his agent has, without authority, purchased a second; nor would the vendor of the horses be precluded from recovering the price of the one because he alleged a contract for the sale of two, and failed to establish the liability of the defendant for both.

The learned circuit judge having, as we think, erred in his instruction to the jury as to the legal effect of the evidence given on the part of the plaintiff for the purpose of establishing the agency of Celluyham, and his authority to bind the defendant by his contract with the plaintiff, the judgment must be reversed; and it becomes unnecessary, therefore, to discuss the question as to the sufficiency of the evidence to sustain a verdict under proper instructions, finding that Celluyham had power to bind the company by his contract for the 1,200 yards of stone to be delivered at Crawford Crossing, or finding that the evidence showed a ratification of such contract by the defendant, by its subsequent acts, if made in the first instance without authority.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.

ORTON, J., dissented.