# Johnson *v.* Ala. Gas, Fuel & Manufacturing Co.

### *Action for Breach of Contract of Employment.*

1. *Proof of power of attorney.*—Plaintiff suing for the breach of a contract, which purports to have been signed by the defendant corporation, "by its attorney, S. M. B.," and stating that B. showed him his power of attorney at the time the contract was made, must adduce proof of its execution before he can be allowed to testify as to its contents.

2. *Authority of general superintendent; proof of agency.*—When the business of a private corporation is the manufacture and sale of a patent gas-burner, "it may well be questioned whether the sale of State and county rights, reducing the territory in which the corporation itself may make sales, relates to the ordinary concerns of the business, and whether authority to make such sales can be inferred from the mere relation of general superintendent;" but, when the contract sued on is signed by him in the name of the corporation, not as general superintendent, but as special agent or attorney, it is incumbent on the plaintiff to show the extent of his authority, or a ratification of the contract by the corporation.

APPEAL from the City Court of Birmingham.

Tried before Hon. H. A. SHARPE.

This action was brought by W. W. Johnson, against the Alabama Gas, Fuel & Manufacturing Company, a corporation

organized under the general statutes, to recover damages for the breach of a special contract, and was commenced on the 17th August, 1888. The complaint contained a special count on the contract, alleging a breach, and the common count for money had and received, claiming $500. The defendant pleaded the general issue, and a special plea denying the execution of the contract; and issue was joined on these pleas. The contract sued on, as offered in evidence on the trial, was dated March 7th, 1887, and was signed in the name of the defendant, "by their attorney, S. M. Biddison," as party of the first part, and by said plaintiff and E. L. Richards as parties of the second part; and it purported to have been executed in Atlanta, Georgia. By the terms of said contract, the defendant corporation, whose business was the manufacture and sale of "Biddison's Patent Gas-burner," appointed plaintiff and said Richards "their true and lawful agents, in and for the State of Georgia, to buy, sell and handle the *Biddison Gas-burner*, and agrees to furnish the same at the following prices for cash," and to "give them the exclusive control of the sale of said gasburner, in and for the State of Georgia, as long as they shall continue to handle the same in the interest of said first party;" and the parties of the second part agreed to give an order for 500 burners, and to pay one dollar each for them when ordered, "as a guaranty of good faith."

The plaintiff testified on the trial, that said Biddison came to him in Atlanta, about March 7th, 1887, "representing himself to be the general superintendent of the defendant corporation, and that it was engaged in the manufacture and sale of the *Biddison Burner;* and said that he had come to Atlanta to sell said burners, and to establish a State agency for the defendant for their sale in Georgia; and showed witness a power of attorney, which authorized him to make such sales and to establish such agency, and which purported to be signed by the defendant, through its president, Robert P. Duncan." Witness further testified, that Biddison kept the power of attorney in his own possession, and he had never seen it since; and that he was not acquainted with the handwriting of said Duncan, though he had seen other papers in the same handwriting which purported to be signed by him. Plaintiff then proposed to testify to the contents of said power of attorney, but the court excluded the evidence, on objection by the defendant, "because the original was not produced, nor its execution proved;" and plaintiff excepted.

Plaintiff then produced the written contract, which he said was in the handwriting of said Biddison, and was signed by the parties on the day of its date. The defendant objected

to its admission as evidence, " on the ground that it was not shown to have been executed by said defendant, or by any one authorized to act for it in the premises; whereupon plaintiff undertook to show to the court that the same was not only executed, but was ratified by the defendant. " The plaintiff then testified, in substance, that he and Richards paid Biddison the $500, as specified in the contract, and afterwards sent several orders for burners to the defendant at Birmingham, which were promptly filled, and he produced the defendant's several letters showing these facts. These letters, six in number, were dated between the 12th March, and April 2d; but Biddison's name was not mentioned in any of them, nor was any reference made to said special contract. The plaintiff testified, also, that the box in which the burners were sent to him, in response to his orders, contained several printed circulars, one of which he produced, and in which the officers of the corporation were named: "Robert P. Duncan, president; W. H. Wooldridge, vice-president; Leigh Carroll, secretary; S. M. Biddison, general superintendent." The plaintiff read in evidence the charter of the defendant corporation, and the minutes of the proceedings at the meetings of the stockholders and directors. The minutes showed but one meeting of the stockholders, at which directors were elected, and two meetings of the directors, at the first of which the officers named in the circular were elected; and the bill of exceptions further states: " At none of said meetings, nor at any other time, so far as the minutes showed, was there any resignation of officers, or appointment of officers other than as above specified; and there was no resolution passed, or action taken in any way, defining or limiting the duties or authority of any officer." Plaintiff testified, also, " that he never ordered any burners from defendant, except under said contract with Biddison, never paid any money except said $500 to Biddison, and never received more than ten burners in all, which were defective and worthless; that he came to Birmingham, about three months after the making of said contract, and then saw said Robert P. Duncan, the president, and showed him the original draft of said contract, in the handwriting of said Biddison, as above set ont; that Duncan made no objection to it, and did not deny Biddison's authority to make it; and that he was not positive he showed Duncan the contract, but was positive he had a conversation with him about it."

Wooldridge, the vice-president of the corporation, who seems to have been introduced as a witness by the plaintiff, though the fact is not directly stated, testified, " that Biddison was defendant's general superintendent up to the time he left

[Johnson v. Ala. Gas, Fuel & Manufacturing Co.]

Birmingham, early in March, 1887, before making the contract with plaintiff; that it was his understanding that Biddison was no longer superintendent when he left Birmingham, and that he resigned the day before he left; that he was not recognized by defendant as superintendent, nor was he acting as such, when he left Birmingham, nor did he ever after act as superintendent with the knowledge or consent of defendant, though witness knew of no formal resignation, nor any action of the directors or stockholders as to his resignation or removal, and, to the best of his recollection, no such action has ever been taken;" also, "that plaintiff came to Birmingham in the summer of 1887, and told him about said contract, being the first time witness had ever heard of it; and that he then promptly denied Biddison's authority to make it, and told plaintiff that defendant would not carry it out, but would fill his orders for burners at the regular rates, for cash, as anybody else could get them; that defendant ceased the manufacture of burners about this time, and has been practically defunct ever since."

Leigh Carroll, the defendant's secretary, testified to the election of Biddison as general superintendent, and that he was such "in March, 1887, until just before he started to Atlanta, with the avowed purpose of making back the money he claimed to have lost in the company; that Biddison had no authority from defendant to make any contract for the sale of State or county rights, or to receive any money for defendant; that the board of directors reserved to themselves all powers affecting the distribution of territory by the sale or grant of such rights; that the defendant had never received any part of the money said to have been paid by the plaintiff to Biddison; that the defendant knew of the sale of 500 burners by Biddison to plaintiff, shortly after it was made, but did not know the terms or particulars of the contract between them, and had no reason to believe that it was otherwise than defendant would make with any one;" and that the contract was promptly repudiated by defendant, on first learning its terms, when plaintiff visited Birmingham three months afterwards.

"This was all the evidence, and the defendant introduced no evidence except by cross-examination of plaintiff's witnesses." On motion of defendant, the court then excluded the contract as evidence, "on the ground that the evidence failed to show that it was executed by defendant, or that Biddison was authorized to execute it for defendant, or that defendant had ratified it;" to which ruling plaintiff excepted. The cause having been submitted to the decision of the court without a jury, the court thereupon rendered judgment for the defendant. The judgment of the court, and its rulings on evidence, are here assigned as error.

[Johnson v. Ala. Gas, Fuel & Manufacturing Co.]

J. M. McMaster, and G. R. Harsh, for appellant.

Feagin & Wilkerson, *contra.*

CLOPTON, J.—The causes of error go to the authority of Biddison to bind the company by the contract sued on. In the absence of proof of its execution, the court committed no error in excluding evidence of the contents of the power of attorney, purporting to have been made by defendant by its president. The evidence having been excluded, plaintiff showed that the chartered business of the corporation was the manufacture and sale of "Biddison's Patent Burner," and the sale of State and county rights, and that Biddison had been appointed by the directors the general superintendent. On these facts, it is contended that he had authority to make such contract, on the general rule, that a corporation is liable on a contract made by the superintendent, or general manager, within the scope of the corporate business, and relating to the ordinary concerns of such business; and that an innocent person, dealing with him, is not affected by any secret limitations upon the authority pertaining to the duties of his department. It was shown on the part of the defendant, that Biddison had ceased acting as general superintendent before the making of the contract, and that the directors reserved to themselves all power affecting the distribution of territory by the grant or sale of State and county rights. It may well be questioned, whether, in a corporation of this character, organized as this was, the sale of such rights, reducing the territory in which the corporation itself may make sales, relates to the ordinary concerns of the business, and whether authority to make such sales can be inferred from the mere relation of general superintendent.

Be this as it may, the contract was not a contract for the sale of a State right; but by it plaintiff and E. L. Richards were constituted and appointed "agents in and for the State of Georgia, to buy, sell and handle the Biddison Gas Burner," with the exclusive control of the sales in that State, and with stipulations to furnish the burners at specified prices on orders. The contract was not made with Biddison, nor did the plaintiff rely upon his authority, as superintendent. It is apparent from the contract itself, that it was made with him as a special attorney, and was signed by him as such—as acting under a special power, which plaintiff testified was shown to him by Biddison. In making a special contract with him acting in such capacity, plaintiff was bound at his peril to ascertain his authority and its extent. The evidence is insufficient to show a

ratification; on the contrary, it shows that the company repudiated the contract as soon as informed of its existence and character. Plaintiff having failed to establish Biddison's authority to bind the company by the contract, the City Court committed no error in rendering judgment for defendant.

Affirmed.