WALKER *ET AL.* v. PEAKE *ET AL.*

(150 S. E., 757)

258

262

*Mr. John K. Hamblin,* for appellants,

*Mr. MacBeth Young,* for respondent,

December 4, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of his Honor, Judge Rice, sustaining a demurrer to the complaint upon the ground

that it did not state facts sufficient to constitute a cause of action.

The action is upon a note dated July 1, 1927, due December 1, 1927, signed by "Mutual Holding Company, by C. K. Morgan Secretary and Treasurer," payable to the order of Citizens' Bank & Trust Company, for $13,728, with interest after maturity at 8 per cent. per annum and 10 per cent. attorney's fees.

It is alleged to have been a renewal, after two other renewals, of a note dated May 5, 1926, due January 1, 1927, similarly signed and payable, for $13,000, with similar interest and attorney's fees.

It appears that in January, 1928, the Citizens' Bank & Trust Company was declared insolvent, and the plaintiffs Walker and Wilburn were appointed receivers of that institution. They found the note in question among the assets of the bank, and upon refusal to pay the suit was commenced at some time in 1928, in the right of the bank, which is alleged to have been duly chartered and organized under the laws of this State.

It appears in the brief of counsel for the defendants, respondents, although not in the complaint, that in May, 1926, the State Bank Examiner undertook the merger and consolidation of a state bank, the Farmers' Bank & Trust Company, with the Citizens' National Bank, both of Union, S. C., and to the capital stock of the consolidated banks to add a new capital of $25,000; that in the proposed merger, $25,000 of the assets of the Farmers' Bank & Trust Company and $50,000 of the assets of the Citizens' National Bank were taken over by the newly organized bank, the Citizens' Bank & Trust Company, which added to the $25,000 of new stock to be issued upon subscriptions, by the new bank, gave it a capital of $100,000; $12,500 was to be raised by the stockholders of each of the two consolidated banks. This statement, while not appearing in the complaint, and not to be

taken as true, though apparently so, makes clear the terms of the agreement among the defendants, stockholders of the Farmers' Bank & Trust Company, which cuts an important figure in the present controversy.

In order to obtain the $12,500 of stock in the new bank, the defendants executed a paper styled an "Agreement," on May 5, 1926, which reads as follows:

"AGREEMENT

"Whereas, it is desired to at once complete the capitalization of Citizens Bank and Trust Company by the payment in cash or its equivalent of Twenty-five Thousand ($25,-000.00) Dollars, of which Twelve Thousand and Five Hundred ($12,500.00) Dollars is assured by interested parties of the stockholders of the Farmers Bank and Trust Company and whereas, we, the undersigned stockholders of the Farmers Bank and Trust Company are to be largely interested in the above new bank; and in order to raise in cash or its equivalent the said sum of Twelve Thousand and Five Hundred ($12,500.00) Dollars to be raised on the part of the stockholders of the Farmers Bank and Trust Company, as stated, we hereby form and organize ourselves into a holding company, to be known as the Mutual Holding Company, for the purpose and to the end that by and in the name of the said Company we may have issued to it in stock of the said Citizens Bank & Trust Company Twelve Thousand Five Hundred ($12,500.00) Dollars, being the part thereof to be raised by the Stockholders of the Farmers Bank and Trust Company, and, that C. K. Morgan be and hereby is authorized *on behalf of the undersigned,* and, in the name of the Mutual Holding Company through which we are acting, to subscribe to Twelve Thousand Five Hundred ($12,500.00) Dollars of the said capital stock of Citizens Bank and Trust Company, as Secretary and Treasurer of the said Mutual Holding Company, and, *for us,* in the name

of the said Mutual Holding Company, as its Secretary and Treasurer, to make a note to the said Citizens Bank and Trust Company for the sum of Twelve Thousand Five Hundred ($12,500.00) Dollars, being the amount of said stock subscription, which said note is to be due and payable January 1st, 1927, and to bear interest from date at the rate of six (6) per cent, per annum, and to receive and accept from the said Citizens Bank and Trust Company a stock certificate of its capital stock, to be issued in the name of the said Mutual Holding Company, and in the said amount of Twelve Thousand and Five Hundred ($12,500.00) Dollars.

"Inasmuch as the value of the said capital stock in the said Citizens Bank and Trust Company, as appraised by the State Bank Examiner and the Directors of the consolidated institutions is *worth considerably more than par,* and, inasmuch as it is the purpose of the undersigned to sell and dispose of said stock, the said Secretary and Treasurer of the said Mutual Holding Company is hereby authorized to offer same on such basis and terms as we may hereafter direct and approve, and, in as much as it is desired that the said stock held by the said Mutual Holding Company in the said Citizens Bank and Trust Company be represented and voted at the meetings of said Bank, Mr. B. B. Going, is hereby constituted and appointed as the Agent of the said Mutual Holding Company for that purpose, and the said Secretary and Treasurer hereby authorized and empowered to issue proxies for that purpose.

"All receipts from the sale of stock are to be credited on the above said note *or any renewal thereof;* and to the payment of same and to the carrying out of this agreement, *we hereby bind ourselves, our Executors, Administrators, jointly and severally;* and authorized and empower the said Secretary and Treasurer in making the said note to cover said subscription of stock, as aforesaid, to attach thereto a copy of this agreement *as our binding obligation,* together with the stock issued as collateral to the same.

"Witness our hands and seals on this 5th day of May, A. D., 1926.

"C. H. PEAKE [Seal]
"C. K. MORGAN [Seal.]
"E. L. LITTLEJOHN [Seal.]
"B. B. GOING [Seal.]

"In the presence of:
  "P. D. BARRON.
  "W. W. BRADLEY."

(Italics added.)

The complaint alleges: "That in pursuance of said written agreement the said defendants under the style of the Mutual Holding Company by C. K. Morgan, Secretary and Treasurer on the 5th day of May, 1926, signed a certain promissory note due and payable on the 1st day of January, 1927, in the sum of Thirteen Thousand ($13,000.00) Dollars, which provided for interest at the rate of eight per cent (8 per cent) per annum and ten per cent, (10 per cent) attorney's fees. That said note was not paid at maturity, but was renewed three times, and that the said note as renewed on the 1st day of July, 1927, is as follows." (Here follows a copy of the note which is described above.) It alleges a payment upon the note of $250 on January 9, 1928, leaving a balance due and unpaid of $13,488 with interest and attorney's fees. It alleges a demand upon and refusal by the defendants to pay, and asks judgment for $13,488 with interest and attorney's fees.

To this complaint the defendants interposed a written demurrer, which will be incorporated in the report of the case.

Upon hearing before his Honor, Judge Rice, the demurrer was sustained upon the ground (referring to Morgan, who executed the note): "His instructions set out in said instrument were plain, clear and explicit, to execute a note for $12,500.00 and to bear interest at 6 per cent. The note sued is for $13,000.00 and bears interest at 8 per cent. If he could

bind the defendants by executing a note for $500.00 more than his written instructions authorized him to execute, then he could, have bound them even though the amount in the note was for $10,000.00 more than authorized."

From this order the plaintiffs have appealed. The respondents have given notice to sustain the order upon the second and third grounds of the demurrer.

His Honor clearly misconstrued the terms of the note actually executed; it was not as stated for $13,000.00, $500-00 more than the $12,500.00 authorized, but for $13,000.00 due January 1, 1927, with interest *after maturity*. In that form it corresponded with the authorization contained in the agreement for all practical purposes, except as to the interest at 8 per cent. after maturity and 10 per cent. attorney's fees. While so far as the principal and interest are concerned it did not conform *precisely* with the authorization, which contemplated a note for $12,500.00, due January 1, 1927, with interest *from date* at 6 per cent., there was no difference between a note so drawn and that contemplated as will appear:

The note strictly as authorized would have been:

Principal ............................... $ 12,500.00
Date May 5, 1926
Due January 1, 1927
Interest from date at 6 per cent., 240 days .... 500.00

Due January 1, 1927 ...................... $ 13,000.00

The note as actually executed:

Principal ............................... $ 13,000.00
Date May 5, 1926
Due January 1, 1927
No interest until *after maturity*.

The one precisely the same in legal effect as the other.

But it is contended by the defendants, and it is manifestly true, that there was an excess of the authorization of the agent Morgan in executing the note con-

taining a provision for interest after maturity at 8 per cent. and for 10 per cent. attorney's fees. If the note had been drawn in conformity with the authorization, it would have borne interest at 6 per cent. from its date to its maturity and 7 per cent. thereafter. As it was drawn it included the interest at 6 per cent. from its date to maturity and 8 per cent. thereafter with 10 per cent. attorney's fees; so that there was clearly an excess over the authorization of 1 per cent. in the interest after maturity and in the 10 per cent. attorney's fees.

The question is: Does that excess in the authorization avoid the entire obligation? There is an instant rebellion at an affirmative answer to that query, which has incited an investigation of the approved authorities upon the subject.

The defendants were members of a crew of apparently a stranded vessel; they were stockholders of the Farmers' Bank & Trust Company, a floundering vessel, to whom the bank examiner was suggesting a measure of relief from what appeared a certain loss. The agreement discloses that assurances were made by him to the effect that the value of the stock in the new enterprise would be "worth considerably more than par," and they decided to enter the scheme which appeared a certainty to recoup their losses in the old corporation. To accomplish this they hit upon the plan outlined in the "agreement," to buy 125 shares of the new corporation by floating a loan with that bank, for their own use and benefit, as is constantly reiterated in the agreement; to organize a holding company which would *for them* make the subscription, give the note, acquire the stock, pledge it as collateral, and retire the note by the sale of the stock from time to time. The scheme was carried out in toto. It is incredible that the defendants were not informed of all that was done, even to the execution of the note with its unauthorized excess of power. They waited for three years, expecting and hoping for a realization of their dreams which did not come true; only a credit of $250.00 appears to have

entered upon the note; evidently the purchase of the acquired stock did not prove alluring; and when the crash came they proposed to repudiate the agreement to the performance of which *"we hereby bind ourselves our executors, administrators, jointly and severally,"* upon the ground that *their* agent in making the note had to an exceedingly limited extent exceeded his authority. The note was not paid at maturity, January 1, 1927, and was renewed (as the complaint alleges), three times; the last renewal being July 1, 1927, at which time it is alleged that there was due upon it $13,-738.00. (How this result was obtained cannot be comprehended, as at that time the obligation had continued for only six months, and at 8 per cent. the interest would have been only $520.00.) In January, 1928, a payment of $250.00 was made upon the note. It is incomprehensible that during all of this time the defendants were in ignorance of the existing conditions. Be that as it may, the stubborn fact remains that the defendants had fully carried out their purpose of securing the 125 shares of stock in the new corporation upon the faith of the note which they had authorized Morgan to make, and should not now be heard to repudiate his acts except to the extent of the excess of 1 per cent. interest after maturity and the attorney's fees.

The law appears to be this:

"Where there has been an excess in the execution of a power, it is void so far as the excess is concerned, but good within the limits of the power, unless the valid and invalid parts are inseparably connected." 31 Cyc., 1146.

"Where, however, in performing one transaction he (the agent), does an authorized act and also something more which he was not authorized to do, the authorized portion of the act may be treated as valid and binding, and the other rejected, provided the two portions are not so interwoven that they cannot be separated." 31 Cyc., 1411.

In 21 R. C. L., 853, it is said: "Although the agent exceeds his authority, the principal will be bound to the extent

that he has acted within the powers conferred on him. In other words the authorized acts of the agent are valid, and only those in excess of his authority are invalid."

In a note to *Spengler v. Sonnenberg* (Ohio) 52 L. R. A. (N. S.), 510, it is said: "Thus, it has been held that a principal is not relieved from the separable part of a contract which he authorized his agent to make by the fact that the latter undertook, in excess of his authority, to bind the principal to another part of the agreement." Citing *Guaranty Trust Co. v. Koehler* (C. C. A.), 195 F., 669; *Vanada v. Hopkins*, 1 J. J. Marsh (Ky.), 285, 19 Am. Dec., 92; *Jesup v. Bank*, 14 Wis., 332; *Gano v. R. Co.*, 49 Wis., 57, 5 N. W., 45; *Drumright v. Philpot*, 16 Ga., 424, 60 Am. Dec., 738.

In *Guaranty Trust Co. v. Koehler, supra,* it was held that a principal who authorized his agent to guarantee the payment of a certain sum and interest thereon was not released from the guaranty to that extent by the fact that the agent also guaranteed by the same contract the payment of interest on an additional sum.

In *Jesup v. Bank, supra,* it was held that bonds executed by the president of a corporation under the authority of a resolution of the board of directors were not rendered invalid because they contained an unauthorized stipulation to the effect that the whole principal should become due at the option of the holder on any default in paying interest rule in such case being that where the agent adds something beyond his authority, the excess will not invalidate that which may well stand without it.

In *Gano v. R. Co., supra,* it was held that a contract made by an agent for the purchase of stone for his principal to be delivered at different points was separable, and that where it appeared that the agent was authorized only to contract for the stone that was delivered at one point, the plaintiff was entitled to recover for stone delivered at that place.

In *Wilson v. Beardsley,* 20 Neb., 449, 30 N. W., 529, it was held that one who indorsed and paid a draft drawn by an agent upon his principal in an amount greater than the agent was authorized to draw was entitled to recover from the principal to the extent to which the agent was authorized to draw.

In *Kane v. Sholars,* 41 Tex. Civ. App., 154, 90 S. W., 937, it was held that a deed containing a covenant of warranty executed by an agent who was authorized to make only a quitclaim deed is valid to the extent of the agent's authority, and operates to convey the land so far as the prinpal could do so. See also *Robinson v. Lowe,* 50 W. Va., 75, 40 S. E., 454.

In *Vanada v. Hopkins,* 1 J. J. Marsh (Ky.), 285, 19 Am. Dec., 92, the Court said: "If therefore, in any such instrument, he shows what land he did sell for his principal, and it be the land he was authorized to sell, and then proceeds in the same instrument, to bind his principal to do an act not warranted by the power, it seems to us that the principal may well be coerced to perform that part, wherein the agent had power to bind him. * * * In such cases, the doctrine of Coke may be safely relied on, that, 'where a man doth that which he is authorized, and more, it is good for that which is warranted, and void for the rest.' "

In *Johnson v. Blasdale,* 1 Smedes & M. (Miss.), 17, 40 Am. Dec., 85, the Court said: "If there is, in fact, a limit to the authority, which has been exceeded; if a third person takes the note with knowledge that the limit has been transcended, the note will not be binding in his hands as against the surety for the full amount. Ch. Bills, 33; [*Violet v. Patton*], 5 Cr. [U. S.], 151 [3 L. Ed., 61]; [*Russel v. Langstaffe*], 2 Doug. (English), 514. But the question will arise whether the note is voidable in toto, or only for the excess beyond the sum which was authorized. The latter seems to us to be the true rule, and that the act of an agent, who ex-

ceeds his authority, binds his principal to the extent of his authority, but is void for the residue. 2 Kent, 617; Story Agency, 158; *Winth v. Crowther,* 1 Cromp. and Jer. Ex. Rep., 316."

In *Wilson v. Beardsley,* 20 Neb., 449, 30 N. W., 529, it was held, quoting syllabus: "The plaintiffs, who were engaged in business in the city of O., in this State, wrote a letter to one N., their salesman at Ogden, Utah territory, authorizing him to draw on them for $75. He placed a figure '1' before the figures '75,' whereby the letter was changed to show authority to draw for $175. The letter, as changed, he showed to one B., the hotel keeper with whom he was stopping, and thereby induced him to indorse a draft on the plaintiff for $150. The draft having been protested for non-acceptance, and paid by the endorsee, held, that he could recover against the plaintiffs to the extent of the authority of their salesman to draw on them."

In *Yost v. Ramey,* 103 Va., 117, 48 S. E., 862, it was held that a statutory bond which contained an extraneous obligation was nevertheless good for what was authorized. To the same effect are *Gibson v. Beckham,* 16 Grat. (Va.), 321; *Jackson v. Hopkins,* 92 Va., 601; 24 S. E., 234; *Pratt v. Wright,* 13 Grat. (Va.), 175, 67 Am. Dec., 767.

In *Reed v. Seymour,* 24 Minn., 273, it was held that the exercise of a mere excess of authority in some particular in the making of a contract by agent will not make it void as to the residue which was within his authority.

In *Hammond v. President, etc.,* of Michigan State Bank, Walk. Ch. (Mich.), 214, it was held, quoting syllabus: "Where an agent, acting within the scope of his authority, does a thing which, standing alone and by itself, would be binding on his principal, and at the same time does something more, which he was not authorized to do, and the two are not so interwoven with each other that they cannot be separated, but constitute different parts of the same contract,

that which the agent was authorized to do, is binding on his principal, and that only which he was not authorized to do, is void."

In *Wynn v. Hoffman,* 203 Ala., 72, 82 So., 32, 34, the Court said: "It is a general rule of agency that, if authority is only given to do a specific act, the limit of which is known to the person with whom the agent contracts, and, notwithstanding this limited authority and its knowledge, the authority is exceeded or materially varied, the principal is bound only to the extent of the specific authority given and exercised by his agent. *Rhode v. Gallat,* 70 Fla., 536, 70 So.. 471, and authorities; *Sumrall v. Kitselman,* 101 Miss., 783, 58 So., 594; *Johnson v. Ala., etc., Co.,* 90 Ala., 505, 8 So., 101; *Cummins v. Beaumont,* 68 Ala., 294; *Burks v. Hubbard,* 69 Ala. 379."

It has been suggested that the case of *Dellet v. Whitner,* Cheves Eq., 213, is in conflict with the principle above announced. We do not so regard it. On the contrary, both in the circuit decree which was affirmed by the Court of Appeals, and in the opinion of the Court, the principle is recognized. In the latter this statement occurs: "Where there is a complete execution of a power, and something *ex abundanti* added, which is improper, there the execution shall be good, and only the excess void; but, where the boundaries between the excess and execution are not distinguishable, where they are not precise and apparent, it will be bad."

The *Dellet case* is quite complicated, and it will serve no useful purpose to review it in detail. It is sufficient to say that an examination of the facts will show that the variance between the authorization and, the actual transaction is not "distinguishable, precise and apparent"; that the two provisions are inseparable; while in the case at bar it is easily contrariwise.

We think that there is another reason why the demurrer should have been overruled. The questions of ratification and estoppel were open to the plaintiffs,

notwithstanding the fact that they were not pleaded. In this respect the order of the Circuit Judge is based upon a misapprehension of the law, for it is well established that it is not necessary that either ratification or estoppel needs to be pleaded. There were suffcient facts alleged in the complaint from which either reply to the defendants' claim presented such issue.

We do not think that there are sufficient facts stated in the complaint to warrant a consideration of the second and third "additional grounds" submitted by the respondents. The questions attempted to be raised are reserved.

The judgment of this Court is that the order of his Honor, the Circuit Judge, sustaining the demurrer to the complaint, is reversed, and the case is remanded to the Circuit Court for further proceedings consistent herewith.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.