DeBOER CONSTRUCTION, INC.,
Plaintiff-Appellee-Appellant,

v.

RELIANCE INSURANCE COMPANY
and The Insurance Center, Inc.,
Defendants-Appellants-Appellees.

Nos. 74–1581 to 74–1583.

United States Court of Appeals,
Tenth Circuit.

Argued & Submitted Nov. 13, 1975.

Decided Aug. 18, 1976.

Rehearing Denied Sept. 17,
Oct. 26, 1976.

John B. Hayes, Oklahoma City, Okl., for defendant-appellant-appellee, Reliance Ins. Co.

William G. Smith, Oklahoma City, Okl. (Edward L. Ray, Oklahoma City, Okl., on the brief), for defendant-appellant-appellee, The Insurance Center, Inc.

Brian G. Grace, Wichita, Kan. (John R. Stallings and Windell G. Snow, Wichita, Kan., and William J. Ross, Oklahoma City, Okl., on the brief), for plaintiff-appellee-appellant, DeBoer Construction, Inc.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from a judgment in three consolidated cases. As it comes to this Court, each party is an appellant and an appellee. The litigation was first commenced by DeBoer Construction, Inc., after The Insurance Center, Inc., and Reliance Insurance Company denied liability on a construction contract surety bond fraudulently issued by their agent. The trial court gave judgment to DeBoer on several theories, including liability on the bond contract, negligent hiring and supervision of the agent, fraud, waiver of defenses, and estoppel to assert defenses. DeBoer was awarded $1.00 in punitive damages against Reliance. The trial court also gave Reliance a judgment for indemnity from Insurance Center. Each of the judgments is put in issue on appeal. We affirm in part and reverse in part. First, we will state the facts.

Insurance Center is an independent insurance agency doing business in Oklahoma City, Oklahoma. Reliance is an insurance company engaging in many types of insurance, including construction contract surety bonds. DeBoer is a construction company based in Wichita, Kansas. The perpetrator of the fraud in this case was one Dennis Winfrey. At the relevant times he was a general agent for Insurance Center in property and casualty insurance. He was also an assistant vice president of Insurance Center and manager of its bond department. Upon Insurance Center's request, he had been issued a power of attorney from Reliance authorizing him to execute construction bonds up to a maximum penal amount of $500,000. He was given instructions, however, not to write any bond without first obtaining approval from Reliance.

During 1969 and 1970, Winfrey engaged in a scheme with one Wayne Bruce to create several fraudulent bonds for Bruce's carpentry contracting company. Because of its financial condition, Bruce's company was unable to obtain legitimate bonds. Winfrey would provide bonds and appropriate the premiums, never notifying Insur-

ance Center or Reliance that bonds were being provided. Fraudulent bonds of this type were issued to DeBoer on two subcontracts with Bruce.

DeBoer's first contact with Winfrey was on an apartment complex in Oklahoma City known as Pheasant Run. Bruce was vying for a subcontract and introduced Winfrey as his bonding agent. Winfrey told DeBoer's representatives he could provide the necessary bonds. Bruce was awarded the subcontract in December 1969 and Winfrey later furnished separate payment and performance bonds. Winfrey's limited power of attorney was attached to both bonds. DeBoer officials testified they looked to see if a power of attorney was attached, but after seeing it was, they assumed everything was in order and did not read it in either case.

In March, 1970, Bruce and DeBoer entered into a carpentry subcontract, including labor and materials, for the construction of Seven Oaks apartment complex in Peoria, Illinois. During these negotiations, Winfrey represented that Bruce was bondable up to 10 or 11 million dollars. DeBoer was provided a performance bond in the penal amount of $925,000. Again the power of attorney limited to $500,000 was attached, but no one at DeBoer read it. A payment bond was promised by Winfrey, but was never delivered.

By July 1970, Bruce was in default on both projects. DeBoer's inquiry about collecting on the bonds led to the discovery of the fraud. A settlement was reached by which Reliance assumed liability on the Pheasant Run bonds which were within the $500,000 limit on Winfrey's authority. Liability was denied on the Seven Oaks bond, and this litigation ensued.

As we noted above, the trial court based its judgment on numerous theories.[1] Because of our disposition of the case, we

must consider each of them. We will attempt to do so in a logical order.

The first issue is whether Winfrey had apparent authority to bind Reliance on a $925,000 bond. On this issue we have the testimony of three DeBoer representatives—Jerry Gaddis, DeBoer's president; Jerry Andrews, DeBoer's vice president; and Raymond Slusser, DeBoer's field superintendent. Andrews and Slusser testified they never requested a meeting with Winfrey; Wayne Bruce brought him to a meeting and introduced him as his bonding agent. Gaddis testified no one at Insurance Center or Reliance ever represented to DeBoer that Winfrey was representing them. DeBoer representatives had visited Winfrey at his Insurance Center office and had called him there. They knew he had Reliance bond forms and powers of attorney.

■ Regardless of whether this evidence is sufficient to establish apparent authority beyond that stated in the power of attorney, we have no doubt DeBoer is bound by the $500,000 limitation in his power of attorney. "[T]hose who deal with an agent knowing that he is authorized to act by virtue of a power of attorney are bound to ascertain and know the character and extent of the power of attorney under which he assumes to act." 3 Am.Jur.2d *Agency* § 81 (1962); *accord,* Restatement 2d of Agency § 167 (1958). Comment *a* to the Restatement section explains the rule as follows:

[I]f a person has means of knowledge reasonably open to him as to the limits of the agent's authority, he cannot hold the principal unless he uses ordinary diligence to ascertain them, even in those situations in which a principal is otherwise held although the agent goes beyond his authority. He has means of knowledge if he knows or has reason to know that the authority is evidenced by a document open to and intended for his inspection.

---

1. This case was complicated by the trial court's adoption of 250 findings of fact and 42 conclusions of law virtually verbatim from the proposals of DeBoer. We have previously expressed disapproval of this practice and noted that such findings are not as helpful to an

appellate court as those drawn "with the insight of a disinterested mind." *Edward B. Marks Music Co. v. Colorado Magnetics, Inc.,* 497 F.2d 285 (10th Cir. 1974), *cert. den'd,* 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819.

The rule is similarly stated in the Oklahoma statute defining constructive notice.

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

Okl.Stat.Ann. tit. 25, § 13 (1971).

The testimony of the responsible person at DeBoer, Jerry Andrews, shows he was aware that Winfrey's authority was defined in a power of attorney, that such instruments may contain limitations, and that he looked to see if one was attached to the bond, but did not read it. The testimony of others at DeBoer, namely Jerry Gaddis and Raymond Slusser, was to the same effect. The evidence falls squarely within the rule stated and DeBoer cannot escape its effect by relying on indicia of a greater apparent authority. Knowledge that an agent has limited authority defeats any right to rely on apparent authority. *Mid-Continent Petroleum Corp. v. Wilhoit*, 270 P.2d 645 (Okl. 1954); *FDIC v. Grim*, 184 Okl. 275, 86 P.2d 774 (1938).

■ The trial court found DeBoer was excused from knowing the contents of the power of attorney primarily because of the great confidence contractors ordinarily place in bonding companies' representatives. This finding is clearly contradicted by the longstanding rule that it is always competent to limit the authority of an agent, and if the limitations have been brought to the attention of the person dealing with the agent, he is bound by them. 3 Am.Jur.2d *Agency* § 77 (1962).[2]

■ For the same reasons Reliance and Insurance Center cannot be liable on the contract made by Winfrey, they cannot be liable for his fraud. A principal is liable for his agent's fraud committed within the apparent scope of his authority. *Gilmore v.*

*Constitution Life Ins. Co.*, 502 F.2d 1344 (10th Cir. 1974); *Guardian Foundation v. Turner*, 191 Okl. 313, 129 P.2d 592 (1942); *Berry v. Stevens*, 168 Okl. 124, 31 P.2d 950 (1934). If the agent's fraudulent representations are beyond his apparent authority to make on behalf of his principal, the principal cannot be liable. The agent's apparent authority for this purpose is determined in the same manner as his apparent authority to make a contract. *See* Restatement 2d of Agency § 257, Comment *a* (1958). We hold Winfrey's fraudulent representation that he could provide a valid bond for Bruce in the amount of $925,000 was beyond the apparent scope of his authority.

■ The trial court also held the limitation of authority in the power of attorney was ineffective because an investigation by DeBoer, had it discovered Winfrey's lack of authority, would not have disclosed the fraud. This was based on the court's findings that DeBoer logically would have inquired of Winfrey concerning the discrepancy and that Winfrey could have substituted another power of attorney (other Insurance Center employees had powers unlimited in amount), or otherwise covered his tracks without exciting DeBoer to investigate further. We cannot uphold the judgment on this basis. First, we think the inferences taken from the facts go too far. Second, the judgment in effect holds DeBoer could rely on representations by Winfrey as to his own authority rather than tracing it to his principal. If DeBoer officers had discovered Winfrey's lack of authority, they would have been bound to inquire of his principal. *American Nat'l Bank v. Bartlett*, 40 F.2d 21 (10th Cir. 1930).

■ The judgment against Reliance and Insurance Center also was based on negligence. We fully agree with the trial court's finding that they were negligent both in hiring and in supervising Winfrey.

---

**2.** Although a bonding agent's prestige might be a relevant circumstance in determining an agent's apparent authority and the right of a third person to rely thereon, a power of attorney has long been considered an effective means of bringing limitations on authority to the third person's attention and defeating his right to rely on other evidence of authority. The trial court's holding would make powers of attorney without effect as limitations on bonding agents. We cannot agree that this is proper or desirable.

The evidence showed he had neither the experience nor the training customarily required for one in his position. Supervision by Reliance and Insurance Center was nonexistent. Nevertheless, we do not believe DeBoer can recover on a negligence theory because it is barred by its contributory negligence. The obligation to exercise reasonable care is a reciprocal duty, *Squyres v. Klick*, 264 P.2d 325 (Okl.1953), and we cannot look only at the conduct of Reliance and Insurance Center.

As we have stated in considering other issues in this appeal, the law° imposes a duty to exercise reasonable care to ascertain the authority of an agent and to investigate facts that would put a reasonable man on inquiry. *E. g.*, Okl.Stat.Ann. tit. 25 § 13 (1971); 3 Am.Jur.2d *Agency* § 78 (1962). DeBoer breached this duty when it failed to read Winfrey's power of attorney and discover his lack of authority. This failure contributed to DeBoer's injury. We believe the trial court's finding DeBoer was not guilty of contributory negligence is clearly erroneous.

The trial court found Reliance and Insurance Center were estopped from asserting any defenses to liability for Winfrey's acts. This finding was based on a misrepresentation made by Ben Lewis, the representative of Reliance and Insurance Center, at a meeting held to discuss a possible settlement. At this August 14, 1970, meeting, Lewis stated Reliance was still investigating the Seven Oaks bond and would consider validating it if economically feasible to do so. He already knew, however, that a decision had been made to deny liability on this bond. An agreement was reached on the Pheasant Run bonds whereby Reliance agreed to accept liability on them in return for DeBoer's promise to release all retainage [3] due Bruce Construction under the contract. DeBoer contends it relied on the representations concerning Seven Oaks in making the Pheasant Run settlement.

The application of estoppel requires that the person to whom the misrepresentation was made must have relied on or acted upon it to his detriment. *Gypsy Oil Co. v. Marsh*, 121 Okl. 135, 248 P. 329 (1926). Although we find Reliance's conduct thoroughly condemnable, we do not believe the evidence establishes any detrimental reliance by DeBoer. If DeBoer suffered any detriment, it was in relation to the Pheasant Run settlement, not Seven Oaks. We do not believe a false representation that investigation was continuing, recognizing the possibility that liability could still be denied, estops Reliance from actually denying liability. The statement was false, but not inconsistent with the position later taken. If DeBoer wishes to set aside the Pheasant Run settlement on the basis of fraud, that is a separate question. Reliance is not estopped from denying liability on the Seven Oaks bond.

DeBoer contends the trial court's judgment may be upheld on grounds of waiver and ratification by Reliance and Insurance Center. In our opinion, the evidence on these findings is so deficient that it requires no discussion. The trial court's findings of waiver and ratification are clearly erroneous.

The trial court rendered an alternative judgment in this case. It concluded that even if Winfrey's lack of authority was a defense to liability in the face amount of the bond, $925,000, Reliance was nevertheless bound to the extent of authority granted in the power of attorney, $500,000. This is a matter of first impression in Oklahoma, and we are inclined to give great deference to the opinion of the resident federal district judge concerning that state's law. His view "carries extraordinary persuasive force on appeal where there are no state decisions on point or none which provide a clear precedent." *Land v. Roper Corp.*, 531 F.2d 445, 448 (10th Cir. 1976); *Stevens v. Barnard*, 512 F.2d 876, 880 (10th Cir. 1975).

---

**3.** The term "retainage" refers to the ten percent toward the total contract price DeBoer was authorized to retain from the progress payments until the construction was completed.

In this case we have not been cited to any decision in point.

■ The issue is whether the principal should be bound on a contract to the extent his agent had authority when the agent made a contract in excess of his authority, defrauding both the principal and the third person with whom he dealt. The American Law Institute recognized the problem in Restatement 2d of Agency § 164 (1958), but did not attempt to state a rule. Section 164(2) states:

> Where the only difference between the contract as authorized and the contract as made is a difference as to amount, or the inclusion or exclusion of a separable part, the principal is liable upon the contract as it was authorized to be made, provided that the other party seasonably manifests his willingness to accept the contract as it was authorized.

The rule is followed by a caveat that it does not include the situation in which the agent in making the unauthorized terms also intends to act in fraud of the principal. No statement is made as to the proper rule in this situation.

There is considerable support in the cases for the Restatement rule of partial validity. The best collection of cases is contained in *Walker v. Peake*, 153 S.C. 257, 150 S.E. 756 (1929). *See also Lachmiller v. Lachmiller Engineering Corp.*, 144 Cal.App.2d 533, 301 P.2d 288 (1956). The rule is statutory in Oklahoma with respect to powers of attorney authorizing the disposition of real property. Okl.Stat.Ann. tit. 60, § 236 (1971). Unfortunately, the cases do not provide a discussion of the rationale for the rule which would aid us in determining whether it should apply when fraud is involved. According to the Restatement Comments and Reporter's Notes, it is a departure from strict contract principles in an attempt to obtain more equitable results. It is said to be comparable to the rule allowing ratification by a principal of a contract made in excess of the agent's authority. If the principal has the option of accepting the contract in a greater amount, the third person dealing with the agent should be able to accept the contract for the lesser amount originally authorized.

The fairness of the rule is apparent in the case of the honest but mistaken agent. The principal need not be given the option of avoiding the very contract he intended to make because of his agent's mistaken exercise of authority. The fair result is not so apparent when the agent has acted in fraud of the principal. As we stated in discussing other points, one dealing with an agent has a duty to exercise reasonable care to ascertain the agent's authority. One purpose of this rule is to prevent fraud by the agent. We do not believe, however, that the rule permitting partial validity is necessarily at odds with the rule designed to prevent fraud. Holding the principal liable to the extent he has given authority would not diminish the incentive of those dealing with an agent to ascertain his authority. They would still be subject to loss when the agent fraudulently exceeds his authority.

We see no inherent justice in holding the principal for the entire loss when his agent commits fraud within his authority and in allowing him to escape liability entirely when his agent exceeds his authority. The rule of partial validity could have a salutary effect in preventing the type of conduct involved in this case. Reliance set the dollar limit on Winfrey's authority at a level it felt was an acceptable risk, considering the potential loss compared to the chances its agent would be unfaithful. Thinking itself adequately protected from financial loss, Reliance ignored its duty to supervise its agent and protect the public from loss should Winfrey execute a fraudulent contract in excess of his authority.[4] Dividing the responsibility in the event of loss could encourage both parties to exercise greater prudence than they did in this case.

---

4. "A principal may not turn loose his agent on the public, and then merely sit back and exercise little or no supervision." *Gilmore v. Constitution Life Ins. Co.*, 502 F.2d 1344, 1348 (10th Cir. 1974).

■ In considering the legal theory justifying the partial validity rule of Restatement 2d § 164(2), Comment *a* states the rule subjects the principal to liability only in accordance with his expressed intent. Obviously, it is not altogether logical to say the principal subjectively intends to be bound by a contract made by his agent with intent to defraud. As noted above, however, the Comment also concedes the rule is based in equitable rather than contractual principles. We do not believe it does violence to the principle to apply it even when the agent is acting in fraud. The principal has manifested, in a sense, an intent to accept responsibility for his agent's conduct at least to the extent of his authority.[5]

We are not saying the rule of partial validity should apply in all cases involving fraudulent contracts by an agent where the only power exceeded is a limitation on the amount. There are arguments on the other side of the issue that may be manifested in a different factual situation. Based on the facts of this case and the context in which it arises—from a judgment of state law by a resident district judge—we find nothing to convince us the trial court was wrong.

■ The trial court also found that if the performance was valid only to the extent of $500,000, additional damages suffered by DeBoer were covered by an oral contract for a labor and material payment bond. The issues raised are whether the oral promise is within the Statute of Frauds and, if it is, whether it is rendered enforceable under the doctrine of partial performance. Although the trial court found the

oral promise was one of indemnity rather than guaranty and not within the Statute, we will assume for our purposes that it is within the Statute. Reliance has failed to show any basis upon which we could conclude the trial court was erroneous in holding there had been sufficient performance by DeBoer to take the contract out of the Statute.[6]

DeBoer argues it paid the premium for the bond and this is sufficient part performance. Reliance answers this argument in one sentence: "There was no 'full or partial performance' as those terms are used by the Oklahoma Supreme Court in making exceptions to the Statute of Frauds." Reliance offers no explanation and citation of authority. We would note that as to contracts involving interests in land, payment alone is not sufficient to take an oral contract out of the Statute under Oklahoma law. *E. g., Hickey v. Ross*, 197 Okl. 543, 172 P.2d 771 (1946). There are, however, significant differences between land contracts and promises to answer for the debt or default of another, and we do not believe these cases are necessarily controlling.

In 73 Am.Jur.2d *Statute of Frauds* § 468 (1974) it is stated that the part performance doctrine does not apply to promises to answer for the debt or default of another.[7] While recognizing this as the general rule, 37 C.J.S. *Frauds, Statute of* § 253 (1943) says there is authority holding complete performance by one party will take such a promise out of the Statute. Considering the apparent lack of controlling authority,

---

5. Reliance argues the rule of partial validity applies only when the agent has actual express authority to bind the principal. Reliance says its secret limitations on Winfrey's authority gave him no power to bind it without first obtaining its approval. We do not believe these secret limitations should have any effect on the rule. Under contract law a party's intent is determined from his open manifestations, not his secret or uncommunicated intent. *See* 1 Corbin on Contracts § 106 (1963). Under agency law secret limitations on authority generally have no effect on the rights of third persons dealing with the agent. *See* 3 Am. Jur.2d *Agency* § 82 (1962).

6. We are not sure the Statute of Frauds arguments go to the heart of matters concerning the oral promise of a payment bond. However, it is the only issue clearly drawn in the statement of points and in the briefs. We will resolve the issue in that context.

7. The reason given for the rule in § 468 is that the guarantor receives no benefit from the acceptance of his oral promise. This assumes the guarantor is uncompensated and his only consideration is the third person's agreement to deal with the principal debtor. The present case is distinguished by the fact it involves a commercial surety which receives premiums in return for its guarantees.

we believe we should follow our established policy of deferring to the judgment of the resident district judge. *Land v. Roper Corp., supra,* and cases cited therein.

■ In addition to actual damages, the trial court held Reliance was liable for punitive damages in the amount of $1.00. Because we have held Reliance is not liable under a fraud theory, it follows that the award of punitive damages must be reversed. Reliance is not chargeable with the fraud, malice or oppression required to support the imposition of punitive damages. *See Oden v. Russell,* 207 Okl. 570, 251 P.2d 184 (1953).

Finally, we must consider the trial court's judgment of indemnity against Insurance Center in favor of Reliance. The trial court made no findings of fact or conclusions of law specifically relating to this issue. However, we believe the documentary evidence and the other trial court findings are sufficient to allow review of the arguments presented by Reliance in support of the judgment.

■ The only plausible theory argued by Reliance is that Insurance Center's failure to prevent Winfrey's wrongful act constitutes a breach of the agency agreement between them. The record indicates this probably was the basis for the trial court's holding. As a matter of appellate review, we are in as good a position as the trial court to interpret the meaning of a written contract. *Rockwood & Co. v. Adams,* 486 F.2d 110 (10th Cir. 1973). The provision cited by Reliance states: "The Agent [Insurance Center] is hereby granted authority to solicit and submit applications for . . . surety bonds; . . . in the case of bond such authorization to be set forth in Powers of Attorney and letters of limitation . . . ." As we read the contract, it requires Insurance Center to obtain authority in powers of attorney before allowing any of its agents to solicit and submit surety bonds. Had Insurance Center allowed Winfrey to sell bonds without obtaining authority for him from Reliance,

it would have breached the agreement. Having requested authority for Winfrey, Insurance Center complied with the agreement. Reliance then entered a separate agreement with Winfrey and can look only to him to recover its loss.

The trial court specifically found: "Dennis Winfrey was the agent of Reliance Insurance Co. and had authority and the power to bind Reliance in all material respects in this action." By giving Winfrey a power of attorney to act for it, Reliance became his principal and Winfrey had power to bind Reliance directly. We have held he succeeded in doing so in this case to the extent of the authority contained in his power of attorney. His authority to execute Reliance bonds came from Reliance, not Insurance Center. As a matter of contract, Winfrey bound Reliance alone.

Since our judgment is not based on tort law, we need not consider Reliance's arguments concerning its right to indemnity from Insurance Center as a joint tortfeasor.

We have now considered all the issues relating to liability and turn to the issues concerning damages. The trial court found DeBoer was entitled to recover $79,089.60 under the labor and materials payment bond. No error is alleged in the computation of this amount. Under the performance bond, the trial court found DeBoer was entitled to $446,350.06 in cost of completion damages and an additional $108,-000.00 in delay damages. Reliance contends the allowance of delay damages was erroneous. Since we have held Reliance liable on the performance bond only to the extent of $500,000, only part of the delay damages is recoverable if properly allowed.

■ The only evidence that DeBoer suffered loss as a result of delay was the evidence that its sister corporation, Seven Oaks, Inc., which was the owner of the project, had to pay an extra $108,000 in interest on the interim construction loan. Seven Oaks, Inc., and DeBoer Construction, Inc. were both wholly-owned subsidiaries of Jack P. DeBoer Associates, Inc. There was

no evidence that DeBoer Construction was charged in any way for delay damages. DeBoer defends the award on the ground that a backcharge between these wholly-owned subsidiary corporations would be a useless act not required by law. We do not agree.

DeBoer's argument asks us to disregard the separate legal identities of these two corporations. This is the converse of the usual situation in which the rule for disregarding the corporate entity is applied to prevent injustice to a third person injured by the subsidiary corporation. Although indicating it might be allowed in a proper case, the courts have not looked favorably upon shareholders' attempts to deny the existence of their own corporations. Those responsible for the existence of a corporation are not entitled to have it disregarded in order for them to gain an advantage that would be lost under it. 1 W. Fletcher, Private Corporations § 41.2 n.24 (Rev.Ed. 1974), and cases cited therein. This Court has noted that Oklahoma law permits disregard of the corporate entity if used to defeat public convenience, justify wrong, perpetrate actual or implied fraud, or defend crime. *Robertson v. Roy L. Morgan Production Co.*, 411 F.2d 1041 (10th Cir. 1969). The reason for doing so when these factors are present is quite clear. "Where, however, a corporation or an individual has organized another corporation to carry on a particular operation, the reasons for permitting the parent corporation to disregard for purposes of suit the separate entity of the wholly-owned subsidiary corporation are not apparent." *E. M. Fleishmann Lumber Corp. v. Resources Corp. Int'l*, 105 F.Supp. 681, 690 (D.Del.1952). In cases analogous to the present, the courts have denied a plaintiff the right to disregard a corporate entity it created in order to recover additional damages. *Verzani v. State Dept. of Roads*, 188 Neb. 162, 195 N.W.2d 762 (1972); *Sams v. Redevelopment Authority*, 431 Pa. 240, 244 A.2d 779 (1968).

In the present case we see no reason to disregard the separate identities of Seven Oaks, Inc., and DeBoer Corporation. Moreover, there is good reason to refuse. Because of the limited liability of the separate corporations, there would be potential danger to creditors of the corporation which retained the loss on its books without directly obtaining a recovery. The parent of both subsidiary corporations could let the one accept the loss and go into bankruptcy while retaining the recovery in the corporation which does not show the loss. Therefore, we believe the two corporations must be treated as the separate persons they are intended by law to be. Proof that Seven Oaks suffered certain damages is in no way proof of DeBoer Construction's damages. DeBoer failed to produce evidence of its damages for delay and cannot recover them.

Several other issues have been raised in the briefs. We have reviewed them and find only one that merits further discussion in this opinion. All parties are agreed that the trial court erroneously compounded postjudgment interest upon prejudgment interest in computing the amount of the judgment. Our disposition of the case will require recomputation of the interest and this mistake may be avoided on remand.

We affirm the judgment insofar as it holds Reliance liable for $446,350.06 on the Seven Oaks performance bond and for $79,235.44 on the oral promise of a labor and materials payment bond. The judgment against Insurance Center is reversed. The case is remanded for the entry of a proper judgment in accordance with this opinion.