LOGAN, Circuit Judge.
In this bankruptcy action the trustee for debtors King Resources Company and International Resources, Limited appeals the district court's order upholding a special master’s allowance of Arthur Lipper Corporation’s claim against King Resources. The trustee contends that the district court erred as a matter of law (1) in refusing to estop Lipper Corporation from asserting that it had sold airplanes leased to King *711 Resources on certain dates because Lipper Corporation had reported earlier sale dates to the Internal Revenue Service, the Federal Aviation Authority, and the New York Stock Exchange, and (2) in permitting Lip-per Corporation to include in its claim additional taxes it had to pay because of investment credit recapture that occurred when it sold the planes.
Lipper Corporation and King Resources entered into separate lease agreements in 1969 for two airplanes, a Jetstar and a Learjet. Each agreement ran eight years. Lipper Corporation had purchased the planes for the purpose of leasing them to King Resources. In October 1970 Lipper Corporation discovered that the New York Stock Exchange would not consider the planes good assets for purposes of compliance with a rule governing capitalization of member corporations. Lipper Corporation determined that it could best comply with the stock exchange rule by selling the planes. At about the same time, both parties realized that King Resources was experiencing financial problems and might soon become unable to meet its obligations under the leases. The two companies apparently reached an understanding that it was in their interest to sell the planes as soon as possible. Both wished the sales to bring the highest prices possible, however. Lipper Corporation suggested, and King Resources apparently agreed, that Lipper Corporation should immediately transfer title to the airplanes to corporate officers, who would then sell the planes to third parties when they could negotiate favorable prices. Lipper Corporation transferred title to the Learjet to Arthur Lipper III, president of Lipper Corporation, on November 27, 1970. Lipper Corporation transferred title to the Jetstar to Nancy Stuart, another officer of Lipper Corporation, on March 19, 1971. Both officers received guarantees against loss from the corporation. Lipper Corporation reported these transfers as sales to the IRS, the FAA, and the stock exchange. King Resources defaulted on the Learjet lease in February 1971 and on the Jetstar lease in December 1970. The Learjet was sold to an outside party on March 10,1971. The Jetstar was sold to an outside party on September 28, 1971.
Lipper Corporation contends that its claim should include rental payments until the dates of the sales to third parties. The district court agreed. The trustee argues that Lipper Corporation’s representations to the government agencies and the stock exchange that the planes were sold on the earlier dates should estop it from claiming in the present bankruptcy action that the planes were sold on the later dates.
Parties asserting an equitable estoppel normally must have relied to their detriment on the representation of the party that they seek to estop. See, e.g., DeBoer Construction, Inc. v. Reliance Insurance Co., 540 F.2d 486, 492 (10th Cir.1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). There is no evidence that King Resources altered its position on the basis of Lipper Corporation’s representations to the agencies and the stock exchange. Rather than detrimentally relying on these representations, King Resources apparently was aware of their purposes and acquiesced in the transfers of legal title. The trustee argues, however, that we should apply the doctrine of quasi-estoppel to prevent Lipper Corporation from taking inconsistent positions regarding the dates of sale. He contends that considerations of fairness and judicial integrity should preclude Lipper Corporation from asserting here dates contrary to those it reported to the agencies and the exchange. We disagree. Lipper Corporation’s position has been consistent throughout the course of this bankruptcy action. This position did not unfairly surprise or prejudice King Resources, since it did not rely to its detriment on previous representations by Lipper Corporation to other parties. We see nothing unconscionable in Lipper Corporation’s actions. One may legitimately characterize a transaction one way to the IRS for tax purposes (or to the stock exchange for purposes of rule compliance), and another way for purposes of compliance with a contract. See, e.g., Stella v. Graham-Paige Motors Corp., 259 F.2d 476 (2d Cir.1958), cert. de *712 nied, 359 U.S. 914, 79 S.Ct. 583, 3 L.Ed.2d 576 (1959); Lewis v. Realty Equities Corp. of New York, 396 F.Supp. 1026, 1030 (S.D.N.Y.1975). We see nothing sinister in a party’s attempt to comply with more than one set of expectations or constraints. This is especially true when the party’s position has been consistent within the framework of the litigation, and when the other party was not misled by and may have acquiesced in the contradictory positions.
The trustee’s second contention is that the district court should not have allowed Lipper Corporation’s claim for its investment credit recapture as an element of damage under the lease agreement. The Internal Revenue Code permits owners of qualifying personal property, including airplanes, to receive an investment tax credit, which reduces the income taxes otherwise payable. See I.R.C. §§ 38, 48. However, if the owner disposes of the property before the periods specified in the Code and regulations, all or part of the credit is recaptured, resulting in an increase in taxes. See I.R.C. § 47(a)(1). In a lease like the one at issue here, the lessor may elect to pass on the investment credit to the lessee. Treas.Reg. § 1.48-4. Thus, Lipper Corporation and King Resources could have bargained over the entitlement to the benefits of the investment credit. Section 8 of the leases assigned all tax depreciation to Lip-per Corporation, but the leases did not mention the investment credit, which Lipper Corporation took on its tax return. Lipper Corporation claims that it purchased the two planes for the purpose of leasing them to King Resources. It notes that the term of each lease is eight years, which is the estimated useful life of the airplanes, and argues that it based the amount of the lease payments in part on the availability of the tax credit. While the leases did not mention the cost of the investment credit recapture as a specific element of damages, the leases gave Lipper Corporation the right to sell the airplanes if King Resources defaulted. In addition to specific payments, the leases also provided that the defaulting King Resources “shall be liable for all damages and expenses, including reasonable attorney’s fees, incurred by Lessor” because of the default. Section 18.2. The trial court allowed Lipper Corporation’s claim for the recapture for both airplanes based on the special master’s finding that the parties intended to include recapture as an element of damage under each of the lease agreements. This is a factual finding that we must uphold unless it is clearly erroneous. Fed.R.Civ.P. 52(a).
King Resources bases its argument that the trial court’s determination was wrong upon Lipper Corporation's tax returns declaring that the recaptures occurred during its tax year ending March 31, 1971. The returns evidently treated the transfers to Arthur Lipper III and to Nancy Stuart as the dispositions triggering recapture. To some extent our discussion of the estoppel issue above answers this contention. It is clear that Lipper Corporation bore the cost of the recaptures.
Furthermore, it should make no difference whether we treat the sales as occurring when Lipper Corporation transferred the planes to the corporate officers or when the officers sold the planes to the outside parties. On November 27, 1970, with the express consent of King Resources, Lipper Corporation transferred the Learjet to Arthur Lipper III. Lipper Corporation sent notice that King Resources had defaulted on the Learjet lease on February 16, 1971. Arthur Lipper III sold the plane to an outside party on March 1, 1971. All of the relevant events involving the Learjet, then, occurred during Lipper Corporation’s tax year ending on March 31, 1971. Lipper Corporation notified King Resources of its default on the Jetstar lease on December 22,1970. On March 19,1971, Lipper Corporation transferred the Jetstar to Nancy Stuart. Stuart did not sell the Jetstar to an outside party until September 28, 1971, but we do not think that this is controlling. The default giving rise to the sale and recapture occurred before the transfer to Stuart and during Lipper Corporation’s tax year ending March 31, 1971. Moreover, even if we were to treat the sale as occur *713 ring during the following tax year, it was still within three years of the plane’s purchase and therefore would require the same recapture recognition.
We hold that the trial court’s finding on the recapture was not clearly erroneous.
AFFIRMED.