**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 1, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PHILIP ALLEN WORACK, a/k/a Phil
A. Worack,

    Defendant-Appellant.

No. 10-1487

(D.C. No. 1:07-CR-00077-WDM-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **BALDOCK**, and **SILER**,[**] Circuit Judges.

Appellant, Philip Allen Worack, challenges the sufficiency of the evidence

that resulted in his conviction of two counts of filing fraudulent and false federal

income tax returns in violation of 26 U.S.C. § 7206(1). Because there was sufficient

evidence for a rational trier of fact to find Worack guilty, we AFFIRM his conviction.

I. Background

In 1995 Worack started an investor relations firm, with his associate Paul

Schemmel, called LKS Corporation (LKS). Worack owned half the stock of LKS and

---

[*] This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however,
for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for
the Sixth Circuit, sitting by designation.

was president and treasurer of the corporation. Schemmel owned the other half of LKS stock and was vice-president and secretary. LKS's clients paid the company with cash as well as stock in the client companies and stock options to buy stock in the client companies. LKS filed IRS 1099 forms to report Worack's and Schemmel's earnings from LKS and filed federal corporate income tax returns signed by Worack as president of the company.

In 1996, LKS entered into a business relationship with Merrill, Scott & Associates (MSA), a business consulting firm that assisted its clients in reducing corporate tax liabilities, protecting assets and estate planning. MSA provided several services for LKS including: 1) incorporating two foreign companies, Topaz Ltd. and Octagon Worldwide Ltd.; 2) opening bank accounts for Topaz and Octagon in the Bahamas; 3) opening credit card accounts for Topaz and Octagon at their respective banks in the Bahamas; 4) incorporating a domestic company called OAB Enterprises, Inc.; and 5) opening a domestic bank account for OAB Enterprises. Worack and Schemmel were not incorporators, officers, shareholders or employees of Topaz, Octagon or OAB Enterprises, and neither man had authority over or formal connections to the companies' bank accounts. Additionally, Worack indicated he had no authority over any foreign bank account on his individual tax returns.

Subsequently, LKS began transferring its assets to these newly formed foreign corporations. Specifically, LKS transferred its stock and options portfolio to Topaz and directed its clients to issue any future stock or option compensation to either Topaz or Octagon. The assets were sold after they were transferred to the foreign corporations and most of the proceeds from the their sale were transferred to the bank accounts in

2

the Bahamas.

After the assets were liquidated into the Bahamian bank accounts, Worack began using the proceeds for his personal use. He was given the credit card for Octagon (Schemmel was given the credit card for Topaz), and from 1998 to 2002 he used the card for $142,000 worth of goods and services in the United States for his personal benefit. During the years at issue, Worack charged $29,997 in 2000 and $16,134 in 2001. The credit card bills were sent to the MSA offices in the Bahamas and MSA would forward the bills to Worack. Then Worack would fax a message to MSA asking them to use funds from the Octagon bank account to pay the bill. MSA then directed Octagon's bank to pay the credit card bill.

Worack also used funds from Octagon's bank account to pay his mortgage. In January 2000, Worack asked the Bahamian MSA officials to transfer $25,000 from the Octagon bank account to the domestic OAB Enterprises bank account. Subsequently, Worack contacted the domestic MSA offices in Utah and directed them to send a $25,000 check drawn from the OAB Enterprises bank account to the mortgage company holding the lien on his Colorado home. Worack repeated this process in March 2000 to pay off the remaining $78,000 on his mortgage.

For tax years 1998-2002, Worack reported income from LKS, which LKS listed on its 1099 forms, for his personal income taxes. During that time period he did not report any of the money taken from the Octagon bank account as income.

Worack was convicted on two counts of filing fraudulent and false federal income tax returns for tax years 2000 and 2001.

II. Standard of Review

3

We review denials of motions for judgment of acquittal and challenges to sufficiency of the evidence *de novo*.  *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011).  Viewing the evidence in the light most favorable to the government, we must ask whether any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt.  *Id.*  "However, we do not weigh conflicting evidence or consider witness credibility and the fact that prosecution and defense witnesses presented conflicting or differing accounts at trial does not necessarily render the evidence insufficient."  *Id.* (internal citations omitted).

A person violates 26 U.S.C. § 7206(1) when he "[w]illfully makes and subscribes  any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter."

Income is taxable when it is received.  *Walker v. United States*, 202 F.3d 1290, 1293 (10th Cir. 2000).

> Income although not actually reduced to a taxpayer's possession
> is constructively received by him in the taxable year during which
> it is credited to his account, set apart for him, or otherwise made
> available so that he may draw upon it at any time, or so that he
> could have drawn upon it during the taxable year if notice of
> intention to withdraw had been given.

26 C.F.R. § 1.451-2.

III.  Discussion

The money at issue came from Octagon's Bahamian bank account.  That account was funded with proceeds from the sale of LKS's stock and options portfolio beginning in 1996 and continuing thereafter with proceeds from additional sales of stock and

4

options paid to Octagon by LKS's clients for services rendered by LKS. At least as early as 1998 Worack began drawing funds from the Octagon account to pay off his credit card.

Accordingly, whether there is sufficient evidence for any rational trier of fact to find Worack guilty of filing false income tax returns in 2000 and 2001, respectively, hinges on the legitimacy of LKS. If LKS was a legitimate corporation, then the income at issue belonged to the company until it paid Worack's expenses in 2000 and 2001. If LKS was a sham, then Worack earned the income at issue before tax years 2000 and 2001 and failure to report that income in those tax years was not illegal.

The government presented evidence that LKS was a legitimate corporation, that LKS earned the stock and stock options payments from its clients and that the proceeds from the sale of the LKS stock and options portfolio by their international corporate alter egos belonged to LKS. Accordingly, Worack earned the money he spent in 2000 and 2001 from LKS when money was drawn from a Bahamian bank account to pay his expenses. Therefore, his failure to include that income on his 2000 and 2001 personal income tax returns were violations of 26 U.S.C. § 7206(1).

Worack presented evidence that LKS was a sham corporation and, accordingly, when LKS earned revenue Worack simultaneously earned income. Therefore, the money Worack used to pay off his credit card and his mortgage was earned prior to 2000 and failure to include that income on his 2000 and 2001 personal income tax returns was not illegal.

Nevertheless, the government did present sufficient evidence that LKS was a legitimate corporation. Once that fact was accepted it was clear that the proceeds in the

5

Bahamian bank account belonged to LKS and that Worack earned the income in question in tax years 2000 and 2001 when the money from that account was used for his personal expenses. The fact that the government and Worack "presented conflicting or differing accounts at trial does not necessarily render the evidence insufficient." *Cooper*, 654 F.3d at 1115. A rational trier of fact could have found Worack guilty beyond a reasonable doubt and denied his motions for judgment of acquittal.

IV. Conclusion

Once a person chooses to form a corporation he must accept the tax consequences that come with that decision. "For tax purposes, where the purpose for the creation of the corporation is a business one or the creation is followed by business activity, the corporate entity will not be disregarded." *Skarda v. C.I.R.*, 250 F.2d 429, 433-34 (10th Cir. 1957). "Those responsible for the existence of a corporation are not entitled to have it disregarded in order for them to gain an advantage that would be lost under it." *DeBoer Const., Inc. v. Reliance Ins. Co.*, 540 F.2d 486, 496 (10th Cir. 1976) (citations omitted).

Worock cannot ignore the tax consequences that come with forming a corporation. A rational trier of fact could find that LKS was a legitimate corporation. When the company paid Worack's expenses in 2000 and 2001 the money was income to Worack that he failed to report in tax years 2000 and 2001.

6

Accordingly, we AFFIRM Worack's conviction. Appellant's motion to be present at oral argument is DENIED as moot.

Entered for the Court,


Eugene E. Siler, Jr.
United States Circuit Judge